

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| DIANNE MACK and TERRI SCHINABECK, | ) | CIVIL NO. 07-4008 |
| | ) | |
| PLAINTIFFS, | ) | |
| VS | ) | **COMPLAINT** |
| VAN DYKE SUPPLY COMPANY, INC., | ) | |
| DEFENDANT. | ) | |

## JURISDICTION

(1) This is a sexual harassment and retaliation action arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq.

(2) Plaintiffs Dianne Mack and Terri Schinabeck are both residents of Mitchell, South Dakota.

(3) At all times pertinent to this action, Van Dyke Supply Company, Inc. was doing business out of a plant in Mitchell, South Dakota.

(4) Plaintiff Dianne Mack filed a charge of discrimination with the EEOC on August 15, 2006 and received a Notice of Right to Sue on November 16, 2006.

(5) Plaintiff Terri Schinabeck filed a charge of discrimination with the EEOC on August 12, 2006 and received a Notice of Right to Sue on November 16, 2006.

(6) This Court has jurisdiction over Plaintiffs' retaliation claims pursuant to 42 U.S.C. §2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343(4). Venue is proper in accordance with 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000-5(f)(3).

## COUNT ONE:   SEXUAL HARASSMENT

(7)  Plaintiff Terri Schinabeck was employed by the Defendant from August 2, 2000 until her termination on May 18, 2006.

(8)  During her employment, Schinabeck performed her position in a manner that met the expectations of the Defendant.

(9)  Schinabeck had received company awards and recognition for excellent performance, positive performance evaluations and pay raises for performance.

(10) Plaintiff Dianne Mack was employed by the Defendant from September 11, 2000 until her termination on May 18, 2006.

(11) During her employment, Mack performed her position in a manner that met the expectations of the Defendant.

(12) Mack had received company awards and recognition for excellent performance, positive performance evaluations and pay raises for performance.

(13) Beginning in approximately July 2005, Bryce Westendorf, a male co-worker in the Plaintiffs' workplace, made repeated sexual references and comments to several women in the workplace, including both plaintiffs.   Westendorf's offensive behavior in the workplace including the following:

   a) he described his sexual preference and experiences;

   b) he publicly grabbed at his penis and made gestures to suggest masturbation;

   c) he suggested that a female employee should suck on his penis;

   d) he suggested that a female employee would like to have his penis between her legs;

   e) he asked a female employee if she preferred a different sized penis;

2

- f) he commented that he wanted to have sex with the male plant manager because he had a "sexy" walk;

- g) he commented that a truck driver making a delivery to the plant was "hot" and had a "nice tight butt";

- h) he described his love life with his partner in detail and complained about how his sex life affected his knees and body;

- i) he described that he had slept with another male employee and described the other male employee's anatomy;

- j) he described how he had sex with a local priest;

- k) he displayed his thong in the workplace.

(14) Westendorf's sexually offensive comments and behaviors were repeated, directed at several different women in the workplace and created a disruptive, hostile work environment.

(15) Plaintiffs and at least one other female employee reported Westendorf's sexually harassing behavior to their supervisors, the Human Resources manager and the Plant Manager.

(16) In July 2005, the Defendant issued Westendorf an oral warning for commenting that a truck driver had a "nice ass"; he was advised that this was an inappropriate comment and that similar comments would not be tolerated in the workplace.

(17) On a Friday in November 2005, Westendorf showed the Plaintiffs his collection of wigs, dresses, make-up, high-heeled shoes and breast prostheses on the jobsite; both plaintiffs immediately went to the Human Resources office to try to report this violation of the sexual harassment policy.

3

(18) Plaintiffs advised Westendorf that they were offended and would not speak to him unless it was work-related business.

(19) Two work days later, Schinabeck reported to her supervisor, Carla Snedaker, that Westendorf had been making sexually offensive remarks and had displayed his wigs, dresses, make-up, high heeled shoes and a breast prostheses to the Plaintiffs on the jobsite.

(20) Snedaker responded to Schinabeck's report by saying that she did not want to hear it and that Schinabeck needed to resolve the situation herself.

(21) Schinabeck then proceeded to make a report to the local Human Resources Manager, Tamara Larsen.

(22) Snedaker attempted to disrupt and discredit Schinabeck's report to Larsen by repeatedly interrupting Schinabeck's report and suggesting that Schinabeck was being "disrespectful" about Westendorf's sexual preference and stating that employees who complained were "going to be the one's out the door."

(23) Westendorf's behavior created a hostile working environment for Plaintiffs and other employees.

(24) In December 2005, a female employee resigned from her job in December because the Defendant refused to address her sexual harassment complaints about Westendorf's offensive workplace behaviors.

(25) Defendant did not investigate the reports it received regarding Westendorf's sexually offensive behavior.

(26) Defendant took no adequate remedial measures to protect employees from Westendorf's sexually offensive behaviors.

4

(27) Plaintiffs were discharged from their jobs for insubordination on the same day in May 2006.

(28) Plaintiffs were subjected to a hostile work environment due to the sexually offensive actions of their male co-worker in violation of company policy and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

(29) Plaintiffs both lost wages, benefits, incurred costs and related expenses as a result of being unemployed and have suffered humiliation, anxiety and stress as a result of Defendant's actions.

(30) Defendant's actions were willful, reckless and malicious.

## COUNT TWO: RETALIATION

(31) Plaintiffs reassert their allegations in paragraph 1- 30 of the Complaint.

(32) Schinabeck and Mack engaged in protected activity when they reported Westendorf's sexually offensive behavior to supervisors and Human Resources officers in November 2005 and thereafter.

(33) Between the time that Schinabeck and Mack when to Human Resources to report Westendorf's sexually offensive behavior in November 2005 and their terminations on May 18, 2006, their supervisor, Carla Snedaker, began to treat both Schinabeck and Mack differently in the workplace in terms of supervision, monitoring, criticism and job assignments, including:

> a) taking a detailed interest in Plaintiffs' daily work activities, including monitoring what Plaintiffs ate, said privately to each other and what they did on their lunch breaks;
>
> b) instructing Plaintiffs that they could not keep an independent record of their productivity;

5

    c) assigning Plaintiffs to less desirable job duties and refusing to repair equipment Plaintiffs needed for job productivity;

    d) disciplining Plaintiffs for behaviors that other employees were not disciplined for;

    e) suggesting to co-workers and other managers that Plaintiffs were "complainers" or were unhappy with their jobs so that Plaintiffs legitimate reports of policy violations were disregarded or ignored;

    f) making a point to exclude the Plaintiffs from social events and conversations in the presence of other works to assure that other workers were aware that Plaintiffs were not in Snedaker's good graces;

    g) papering Plaintiffs' personnel files with incorrect and inaccurate information in an attempt to undermine Plaintiffs' performance.

(34) Snedaker told Westendorf that she was documenting the Plaintiffs' workplace performance and otherwise engaged his assistance to identify complaints about Plaintiffs in the workplace.

(35) In separate meetings held on April 20, 2006, Mack and Schinabeck were each instructed by Defendant's Senior Human Resources Manager Ron Meyers that they were to shut up and quit making complaints.

(36) On May 17, 2006 Plaintiff complained to Snedaker after Westendorf had screamed at her in the workplace.

(37) On May 18, 2006, Schinabeck was called into a meeting and told that she was "insubordinate" and not following the company's "core values." When Schinabeck pointed out that her male co-worker had not been disciplined according to the company's sexual harassment policy, the plant manager began yelling at her and Schinabeck was fired.

6

(38) Approximately an hour after Schinabeck was fire on May 18, 2006, Mack was called into the office and was told that she was being terminated for insubordination and not following "core values."

(39) In the six months between Plaintiffs' sexual harassment report up until her termination in May, 2006, Schinabeck received at least 5 verbal reprimands and two written warning from supervisors by or at Snedaker's request. In the five years prior to her sexual harassment report, Schinabeck had received 0 disciplinary warning.

(40) In the six months between Plaintiffs' sexual harassment report and her termination in May 2006, Mack received 2 verbal reprimands from supervisors and one written reprimand by or at Snedaker's request. In the five years prior to her sexual harassment report, Mack had received 0 disciplinary warnings.

(41) Defendant retaliated against the Plaintiffs as a result of their reports of discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2000e-5.

(42) Plaintiff was subject to different treatment, altered working conditions and termination as a result of her reports of sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2000e.

(43) Plaintiffs both lost wages, benefits, incurred costs and related expenses as a result of being unemployed and have suffered humiliation, anxiety and stress as a result of Defendant's retaliatory actions.

(44) Defendant's retaliatory actions were willful, reckless and malicious.

WHEREFORE, Plaintiffs prays for judgment against Defendant as follows:

    a. For a trial by jury on the merits of their claims;

7

b. For compensatory damages in such amount as the evidence at trial may show;

c. For damages, including but not limited to, those damages allowed by 42 U.S.C. §2000 *et seq* and any other pertinent and applicable statute, rule or regulation, whether state or federal.

d. For punitive damages in such an amount as the evidence at trial may show;

e. For costs and disbursements incurred herein, including back wages, prejudgment interest and reasonable attorney fees, and for such other and further relief as the Court may deem just.

Dated this 16 day of January, 2007.

JOHNSON & EKLUND

Stephanie E. Pochop
P.O. Box 149
Gregory, SD 57533
Attorney for Plaintiffs Mack and Schinabeck