UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH DAKOTA

SOUTHERN DISTRICT




\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| DIANE MACK and TERRI SCHINABECK, * | CIV.. 07-4008 |
| Plaintiffs, * | |
| * | MEMORANDUM OPINION |
| vs. * | AND ORDER |
| VAN DYKE SUPPLY COMPANY, INC., * | |
| Defendant. * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiffs Dianne Mack (Mack) and Terri Schinabeck (Schinabeck) have sued Van Dyke Supply Company, Inc. (Defendant) for sexual harassment alleging that a male homosexual co-worker, Bryce Westendorf (Bryce), sexually harassed them by making sexual comments and engaging in offensive behaviors in the workplace. Plaintiffs also claim that Defendant retaliated against them by treating them differently and terminating their employment after they complained about Bryce's conduct. Defendant has moved for summary judgment (Doc. 32). For the reasons set forth in this memorandum opinion, the motion for summary judgment is denied.

## FACTUAL BACKGROUND

Since 2003 Defendant Van Dyke Supply Company, Inc. has been a wholly owned subsidiary of Cabela's Incorporated. In November of 1999, Cabela's hired Bryce. In August of 2000, Cabela's hired Plaintiff Schinabeck, and in September of 2000, Cabela's hired Plaintiff Mack. Throughout their employment at Cabela's, Plaintiffs and Bryce worked at a warehouse and distribution facility in Mitchell, South Dakota. In 2003, Cabela's converted the Mitchell, South Dakota facility to distribute Van Dyke products.

Plaintiffs Schinabeck and Mack worked primarily as packagers, packaging products for customers into boxes for shipping. They were described to be at least satisfactory workers until late 2005 and both received Certificates of Appreciation after 5 years of Service. After the conversion of the Mitchell facility, Bryce worked as an invoicer of Van Dyke products. Plaintiffs' and Bryce's

supervisor throughout the time they worked for Defendant was Carla Snedeker. Bryce was a co-worker of Plaintiffs and had no supervisory authority over them. Bryce denies being sexually attracted to women, and in either 2004 or 2005 Bryce disclosed his homosexuality to Plaintiffs. From 2001 to the spring or summer of 2005, Plaintiffs were friendly and social with Bryce at work, including talking to him and having lunch together. However Plaintiffs contend that in the summer of 2005 Bryce became increasingly aggressive and offensive with his sexual gestures and comments in the workplace. By November of 2005, after Bryce had shown Plaintiffs his drag outfit, Plaintiffs report that they were disgusted and grossed out by Bryce and ceased speaking to him except about work matters.

Plaintiffs have presented evidence of Bryce making sexual gestures, suggesting oral sex and otherwise making remarks about penis size, women's underwear, women's breast size and sexual acts to Plaintiffs and other employees at the work place. Plaintiff Mack testified that starting around the summer of 2005, Bryce would make sexually offensive comments directed at her 3 to 4 times a week, and towards her and others probably 5 times a week. Plaintiff Schinabeck testified that Bryce "did things on an every-other-day basis but the big stuff came in November." Plaintiff Schinabeck further explained that after July of 2005, "I mean it could be every other day. He could just come by and take a pole like it was his penis and just whop it around and, you know, just do all kinds of weird things." When asked what was aggressive about Bryce's conduct, Schinabeck testified:

> I guess because just the way he was portraying himself. I mean, I guess Bryce at work was always, it was grabbing objects and sticking them on his penis and running and doing stuff like that. Now he's dressing like a woman. And I'm like, I don't know, you know, I don't want to know any of this. It was coming to the point where I was sick of it. I didn't want to hear any more. I didn't want to know anymore. I'm at work to work, not to listen to your sex life with a priest or your sex life with a guy that worked here. I mean, it is none of my business how big the guy is that works in the picking area.

Plaintiffs contend that by the summer of 2005 Bryce "constantly" made sexual gestures with circular packaging poles and other circular items, making remarks like "Oh, this would fit around my penis," or "Maybe I could use this on my partner." Bryce also asked Plaintiff Schinabeck about her penis preference size while demonstrating options with round tubular packaging poles. Bryce

made frequent comments to Schinabeck, such as "suck on my penis" and "suck this," sometimes using a packaging pole to suggest a penis. Bryce commented to Plaintiff Schinabeck about women having their periods or "PMS-ing" if he thought they were moody. Bryce mimicked masturbation in front of Plaintiffs. Plaintiff Schinabeck witnessed Bryce making a sexual gesture with a packaging pole to another female co-worker and asking the female co-worker, "How would like this up your butt?" Plaintiff Schinabeck also witnessed Bryce using a packaging pole to make a sexual gesture directed at yet another female co-employee.

At work, Bryce described having sex with a Catholic priest to Plaintiffs, and described having sex and described in detail sexual positions utilized with his regular partner to Plaintiffs and other workers. Bryce told Plaintiffs and former employee, Helen Janish, about having problems with his throat and knees as a result of his sexual activity. Bryce described in detail having random sex with another male co-worker, and described the co-worker's penis size to Plaintiffs and other co-workers. Bryce also told Plaintiff Schinabeck about having random sex in Mitchell and Sioux Falls with people that he met on the Internet. On a couple of occasions at work, Bryce would unzip his pants and show his thong, a "playboy sticker" and his tan to Plaintiffs. In addition, Bryce made a sexual comment about a male truck driver being "hot" and having a "nice tight butt" in front of co-workers. Bryce also made comments to Plaintiffs and other co-workers about wanting to "do" Goertz, the male plant manager.

The Plaintiffs quit talking to Bryce except for work-related purposes some time after late October or November of 2005 when Bryce had Plaintiffs get in his pickup and showed them his breast prostheses, his drag outfit and photos of himself in drag, with his legs spread. Plaintiff Mack testified as follows regarding her efforts to stop Bryce's sexual comments and actions prior to the November incident:

> I had told him on many occasions please stop, please stop. Before November, right before that time. I had told him to stop. And when I told him to stop, he would get mad and he would have these little temper tantrums or fits and then like turn on you. So you just, you know, I quit talking to him.

Plaintiff Mack also testified that after she quit speaking to Bryce, she was approached by her supervisor, Snedeker, who asked why she was not talking to Bryce. Snedeker told Plaintiff Mack that she needed to talk to Bryce because he was down at Snedeker's station crying. Plaintiff Mack

also testified that even after she quit speaking to Bryce, his sexual comments to others continued and that "you'd hear him saying something to someone."

Goertz, the male plant manager, described that in July 2005 "there was a noticeable problem about how people were getting along" in Bryce's department. Management then started calling people in to Goertz' office to find out why. It was then first revealed that Bryce was making sexually offensive comments. Helen Janish, a good employee who "liked her job," told Goertz that Bryce was making sexual comments in the workplace, including the comment about a truck driver's butt and the sexual reference to her about "wouldn't this make you wet between your legs." Goertz, Snedaker and Larson then held a disciplinary meeting with Bryce on July 25, 2005, where they instructed Bryce about the anti-harassment policy and advised him that he was prohibited from talking about sexual matters in the workplace, even among his friends. This was the only discipline action ever taken against Bryce.

Goertz testified that months after the July incident and within two months of the time she quit her employment with Defendant, Helen Janish came back to Goertz' office. Although the record is confusing as to whether Janish made certain comments at the first or second meeting, Goertz testified that Janish told him about Bryce making a comment about her being "wet," and that Janish was upset and crying. Goertz testified he consoled her and gave her a Kleenex.

Defendant disputes that Janish quit because of sexual harassment and supports this position with Janish's December 8, 2005, exit interview statements. Plaintiffs have provided a statement that Janish provided Plaintiff in which Janish described the unusual conduct of Bryce and then stated: "The plant manager, Human resources, and my supervisor knew all this and said they would take care of it. Nothing happened so I got another job."[1]

Defendant's sexual harassment policy provides employees are instructed to promptly report to their immediate supervisor, who will then report to the Human Resources Manager and the

---

[1] Although Defendant contends that the Janish statement provided by Plaintiffs is inadmissible, the Court concludes that since Defendant presented the hearsay exit interview statements of Janish in support of their motion for summary judgment the statement presented by Plaintiffs is admissible under FED. R. EVID.806. FED. R. EVID.806 provides that the credibility of a declarant of a hearsay statement may be attacked by evidence of a statement by the declarant at any time inconsistent with the declarant's hearsay statement.

Director of Human Resources (HR). The employee can report to "any other member of management," and employees are assured that "[t]he matter will be investigated and appropriate action will be taken." Under the policy a report to a supervisor is supposed to trigger the supervisor's report to the HR Manager and HR Director.

Plaintiff Schinabeck's supervisor, Snedaker, admits that Schinabeck came to her in November 2005 and discussed that Bryce's behaviors were "not of her moral values." Snedaker testified she does not consider this a report of sexual harassment, that she considered it "gossip" about outside work activities and that she told Schinabeck she would not gossip with her. Plaintiff Schinabeck testified that Snedaker did not want to hear about it. Plaintiff Schinabeck then went to Larson, the HR Representative, to complain about Bryce's behavior but Snedaker came into the meeting room before Plaintiff Schinabeck could register her complaint to Larson. Snedaker then turned the subject around to address alleged complaints about Schinabeck. Plaintiff Schinabeck testified she then went to Goertz, the plant manager but, "He didn't want to hear about it. He said it wasn't work related."

Immediately after the incident in the truck with the drag costume and photos, Plaintiff Mack contends she tried to report the incident to Larson but Larson was gone and the Human Resources office was closed. The following week Plaintiff Mack made three attempts to report the offensive incident to Snedaker, but when she said Bryce's name, Snedaker told her she did not want to hear about it. After Plaintiff Schinabeck had unsuccessfully tried to report Bryce's behavior to Larson, Plaintiff Mack did not try.

On April 20, 2006, Snedaker arranged separate meetings with Plaintiffs Mack and Schinabeck, herself, Larson and Ron Myers. This meeting was to address "disruptive behavior" which Snedaker described as "gossiping" and "chronic complaints" by Plaintiffs Schinabeck and Mack. Plaintiff Schinabeck testified that she tried at this meeting to talk about the problems with Bryce, but Myers told Schinabeck to "shut up" and mind her own business at work.

Prior to December 2005 Snedaker did not keep notes on Mack's or Schinabeck's performance; however she started doing that in December 2005. In February 2006, Snedaker issued a written warning to Schinabeck for using a swear word in an argument with another employee. Plaintiff Schinabeck disputed the incident and noted on the disciplinary warning: "I Feel that I should not been [sic] given a Disciplinary action For Standing up For myself When Reapedatledy

5

[sic] have Told Supervisor The Situation with another Employee."

Sometime after May 17, 2006, Snedaker documented a complaint by a female coworker named Joyce Snyder asking to be moved to a different department because of Mack and Schinabeck allegedly not helping her load carts and displaying disrespectful conduct. Plaintiffs dispute that there was any incident with Snyder. Snedaker recommended Mack's and Schinabeck's terminations because she felt that they were "causing the disruptions" with their continuing comments. Plaintiffs Mack and Schinabeck were both terminated on May 18, 2006, for "insubordination." In Plaintiff Schinabeck's exit interview she told Goertz, Larson and Snedaker that Bryce had sexually harassed her.

## DISCUSSION

### Principles of Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 257; *City of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273-74 (8th Cir. 1988). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Eighth Circuit has observed that "summary judgment should seldom be granted in the context of employment actions, as such actions are

inherently fact based." *Hindman v. Transkrit Corp.*, 145 F.3d 986, 990 (8th Cir.1998), *quoted in Kells v. Sinclair Buick–GMC Truck, Inc.*, 210 F.3d 827, 830 (8th Cir. 2000). However, the Eighth Circuit has also noted "there is no 'discrimination case exception' to the application of Fed.R.Civ.P. 56, and it remains a useful pretrial tool to determine whether or not any case, including one alleging discrimination, merits a trial." *Pope v. ESA Services, Inc.*, 406 F.3d 1001, 1006 (8th Cir. 2005) (quoting *Berg v. Norand Corp.*, 169 F.3d 1140, 1144 (8th Cir.1999)).

## I.
## WHETHER SUMMARY JUDGMENT SHOULD BE AWARDED TO VAN DYKE ON PLAINTIFFS' SEXUAL HARASSMENT CLAIMS?

In order to state a claim for sex discrimination based on a hostile environment, a plaintiff must show the following elements: (1) that she belongs to a protected group; (2) that she was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take proper remedial action. *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372 (8th Cir.1996). Defendant contends that it is entitled to summary judgment because there is no genuine issue of material fact associated with three of the required elements.

Whether the Harassment Was Based on Sex

Defendants contend that since Bryce is gay and made comments and sexual gestures in front of some male employees that this conduct was not based on sex. Defendants also maintain that Bryce acted out of immaturity, and was not motivated by sex. However, harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex. *See Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998). A fact finder may reasonably find discrimination based on sex if the conduct in issue makes "clear that the harasser is motivated by general hostility to the presence of women in the workplace." *Id.* In the case at hand, Bryce has given testimony that would support an inference of negative feelings toward the women in Defendant's workplace. In support of his contention that the supervisor treated him unfairly, Bryce testified;

> Just because she is lesbian and I'm gay. I mean she'd rather have the girls do everything than a guy.
> . . . .

7

>I've always felt that way since I was under her area for the longest time and how she would always delegate the girls to do things even though I was qualified for doing these things.

Also, the Eighth Circuit has held, "A plaintiff in this kind of case need not show, moreover, that only women were subjected to harassment, so long as she shows that women were the primary target of such harassment." *Beard v. Flying J, Inc.*,266 F.3d 792, 798 (8th Cir. 2001). S*see also Quick* v. *Donaldson Co.*, 90 F.3d 1372, 1378 (8th Cir.1996). Plaintiffs have provided evidence that women were the primary targets of the harassment in this case. When asked if Bryce also said sexual things to men, Plaintiff Mann testified, "Well, probably not so much to the men." Also, there is no evidence that any men felt compelled to complain or attempt to complain of Bryce's conduct, or to quit talking to Bryce or quit their employment to avoid the harassment. However, the female Plaintiffs and Helen Janish did feel compelled to take substantial action to avoid Bryce's harassment. A genuine issue of material fact exists with regard to whether women were the primary targets of Bryce's harassment.

Whether the Harassment Affected a Term, Condition, or Privilege of Employment.

Defendant contends that the harassment in this case did not affect a term, condition, or privilege of either Plaintiff's employment. In order for harassment to affect a term, condition, or privilege of employment, the harassment "must be both subjectively offensive to the employee and objectively offensive such that a reasonable person would consider it to be hostile or abusive." *Williams v. Missouri Dep't of Mental Health*, 407 F.3d 972, 975 (8th Cir. 2005). The Court in evaluating the harassment conduct looks to a number of factors, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.* , 510 U.S.17, 23 (1993); *Scusa v. Nestle U.S.A. Co., Inc.*, 181 F.3d 958, 966 (8th Cir.1999). The Court must consider the "totality of the circumstances" to determine whether a work environment is hostile or abusive. *Baker v. John Morrell & Co.*, 382 F.3d 816, 828 (8th Cir.2004).

In this case the overtly sexual comments and gestures were frequent, regular and severe.In addition, there is a showing that the conduct unreasonably interfered with Plaintiffs' work performance, since the Plaintiffs have submitted evidence that they had to stop talking to Bryce to

stop the offensive conduct from being directed at them, and that having stopping talking to Bryce created additional problems for them in the workplace. Although a certain amount of crude and immature behavior may have to be tolerated in a workplace, *see, e.g., Nitsche v. CEO of Osage Valley Elec. Co-op.*, 446 F.3d 841, 845 (8th Cir. 2006), the nature and frequency of the conduct in this cases creates a genuine issue of fact as to whether the conduct poisoned the work environment.

Whether the Employer Knew or Should Have Known of the Harassment

Sexual harassment by a co-employee does not violate Title VII unless the employer knew or should have known of the harassment and failed to take immediate and appropriate corrective action. *Hubbard v. United Parcel Service*, 200 F.3d 556, 558 (8th Cir. 2000). "That an employer responds adequately to an initial report of sexual harassment, however, does not discharge the employer's responsibility to respond properly to subsequent reports of offending conduct by the harasser." *Engel v. Rapid City School Dist.*, 506 F.3d 1118, 1125 (S.D. 2007). "Employees have some obligation to inform their employers, either directly or otherwise, of behavior that they find objectionable before employers can be held responsible for failing to correct that behavior, at least ordinarily." *Whitmore v. O'Connor Management, Inc.*, 156 F.3d 796, 800 (8th Cir. 1998). An employee may also show an employer's constructive knowledge of sexual harassment by demonstrating that the harassment in the workplace was so severe and pervasive that management reasonably should have known of the harassment. *Weger v. City of Ladue*, 500 F.3d 710, 721 (8th Cir. 2007). *See also Smith v. St. Louis Univ.*, 109 F.3d 1261, 1265 n. 3 (8th Cir. 1997) (recognizing constructive notice where "the harassment was obvious to everyone").

Viewed in the light most favorable to the nonmoving parties, the evidence shows that Plaintiffs attempted to tell their employer of the harassment but the employer was not listening. In addition, there is evidence that Defendant was advised of Bryce's inappropriate behavior by Helen Janisch, and that the behavior continued to be so severe and pervasive that management reasonably should have known of the same. Since Plaintiffs have submitted evidence that harassment continued after the disciplinary meeting with Bryce on July 25, 2005, and that Defendant knew or should have known of the same but took no remedial action, Defendant is not entitled to summary judgment on this element.

Whether the Harassment Stopped So as to Bar recovery

      Defendant maintains that Bryce's sexual conduct stopped after November of 2005 when Plaintiffs quit speaking to Bryce and made their alleged attempts to complain of the harassment. Plaintiffs maintain that the offensive conduct never stopped. Although the Plaintiffs may have avoided further offensive conduct being directed at them by refusing to speak to Bryce, Plaintiff Mack testified that she continued to hear Bryce making inappropriate comments to her coworkers after she refused to speak to him. Also, Bryce testified at his deposition that the principles of Defendant's sexual harassment training continued to be violated by sexual conversations in the workplace. Bryce testified as follows:

| | |
|---|---|
| Bryce: | If somebody starts at work the conversation, then I'll join in with them, because we've said that if they start a conversation, that you should finish it up with them and go on. . . . |
| Counsel: | Who says that, that you should finish a conversation if somebody starts a sexual conversation with you? |
| Bryce: | Well, not a sexual conversation, but if it was casual and it leads into sexual, then you can either stop at that point and say "I don't want to talk no further about it" or you can go in, because you, like, trust your employees.<br>. . . . |
| Counsel: | That's the opposite of what they say at sexual harassment – |
| Bryce: | Yes. |

      Bryce also provided the following testimony regarding continuing sexual conversation at Defendant's workplace:

| | |
|---|---|
| Counsel: | Do you talk about your sexuality among your coworkers? |
| Bryce: | We would talk about things about sexuality, sex, all this and that. It was just the – the kind of casual talk and – throughout the whole time we worked through Cabela's. And sometimes people – some of my coworkers that I work with would ask me questions, like what did you do over the weekend with you and your boyfriend or whatever like that. And so I would tell them saying that – it was just a casual talk so….. |
| Counsel: | And does that still go on today? |
| Bryce: | Yes. |

10

Given the evidence of the continuation of the sexual comments in Defendant's workplace even after the Plaintiffs quit speaking to Bryce, Defendant is not entitled to summary judgment based on its allegation that the harassment stopped in November of 2005.[2]

## II.
## WHETHER SUMMARY JUDGMENT SHOULD BE AWARDED TO VAN DYKE ON PLAINTIFFS' RETALIATION CLAIMS?

Under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a), it is "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice [under Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." To succeed on their retaliation claims, Plaintiffs must show that they complained of discrimination, that the Defendant took adverse action against them, and that this adverse action was causally related to their complaint. *Smith v. St. Louis University,* 109 F.3d 1261, 1266 (8th Cir. 1997); *Marzec v. Marsh,* 990 F.2d 393, 396 (8th Cir.1993). Defendant contends that neither Plaintiff can satisfy any of the elements of a retaliation claim.

<u>Complaint of Unlawful Discrimination</u>

Defendant disputes that a grievance or report was made in this case and maintains that even if a grievance or report was made by the Plaintiffs they failed to indicate a belief that the particular conduct complained of amounts to discrimination in a manner barred by Title VII. To support a retaliation claim the complaint must be about conduct which a reasonable person could have believed violated Title VII's standards. *Clark County School Dist. v. Breeden,* 532 U.S. 268, 271 (2001).

Viewing the evidence in the light most favorable to the Plaintiffs, this Court finds that a genuine issue of material fact exists as to whether Plaintiffs complained, but were cut off in their complaints by Defendant's management. Also, because it is undisputed that Plaintiffs' complaints

---

[2]Defendant may not have been entitled to summary judgment even if the harassment had stopped in November of 2005. In *Fuller v. City of Oakland,* 47 F.3d 1522, 1528-1529 (9th Cir. 1995), the Ninth Circuit held that an employer who takes ineffective or no remedial measures does not avoid liability even if the harassment stops for other reasons. Title VII condemns both the existence of past harassment as well as the risk of future harassment.

were about a coworker who had already been disciplined for violation of Defendant's anti-harassment policy, and because Plaintiff Schinabeck communicated that Bryce's behavior's were not of Plaintiff Schinabeck's moral values, the Court further finds that a genuine issue of material fact exists as to whether the Plaintiffs communicated sexual harassment to Defendant.³

Defendant cites to a number os cases in which the complaint was not deemed to be about conduct which a reasonable person could have believed violated Title VII's standards. See *Curd v. Hank's Discount Fine Furniture, Inc.*, 272 F.3d 1039, 1041 (8th Cir. 2001)(e-mail complaining of offensive conduct of salesman standing on showroom floor with pants open tucking in his shirt); *Pope v. ESA Services, Inc.*, 406 F.3d 1001, 1010 (8th Cir. 2005) (shared observation that there were no blacks in the district-manager position in Plaintiff's region); *Genosky v. Minnesota*, 244 F.3d 989, 993 (8th Cir. 2001) (complaint about unfair treatment unspecified in opinion does not equate to complaint about unlawful discriminatory treatment). A jury may conclude that had the Plaintiffs in this case been allowed to fully present their complaints, the subject matter of the same would have been about conduct which a reasonable person would have believed violated Title VII's standards.

Materially Adverse Retaliatory Action

Although the anti-retaliation provision of 42 U.S.C. § 2000e-3(a) does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace, it covers only employer actions that would have been materially adverse to a reasonable employee or job applicant. *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Defendant maintains that the Plaintiffs failed to show that the alleged retaliatory action was materially adverse. The alleged retaliatory action complained of by Plaintiffs and referenced by Defendant in the motion for summary judgment includes changes in supervision, monitoring, and job assignments, as well as criticism about being complainers after they tried to report Bryce's behavior in November of 2005. According to the Plaintiffs these changes eventually resulted in their termination. After considering all the evidence in context, the Court concludes that it is for the jury to determine

---

³In addition, there is evidence contained in a memo that Plaintiff Schinabeck complained to Goertz on July 26, 2005, that Bryce had "put up with a lot of comments over the last 5 years regarding his sexuality." Although Goertz writes in his memo that he told Schinabeck "that if comments were made in a sexual or demeaning connotation that they needed to be reported so that the issue could be dealt with as it is not to go on in the work place," Goertz denies that Schinabeck was in fact reporting sexual harassment in the work place.

whether the alleged retaliatory action constitutes materially adverse retaliatory action.

<u>Adverse Action Causally Related to Complaint</u>

Defendant contends that there is no close temporal connection in this case between the Plaintiffs' complaints of discrimination and the employer's retaliatory action of termination so as to support an inference of a causal connection between the two. It may be that the time period between the November 2005 complaints and the May 2006 terminations are not sufficiently close to support an inference of a causal connection between the two if this were the only evidence of a causal connection between the two. See, e.g., *Rath v. Selection Research, Inc.*, 978 F.2d 1087 (8th Cir. 1992)(doubtful that causal connection established when only evidence of causal connection is that plaintiff's notice of termination came six months after engaging in protected activity). However, Plaintiffs have presented additional evidence of causal connection between their complaints and their terminations.

Plaintiffs have presented evidence that up to November of 2005, they were considered to be at least satisfactory workers until who had received Certificates of Appreciation after 5 years of Service. Only after this time frame were they characterized as chronic complainers, and singled out for documentation of their performances and attitudes by their Supervisor. Only after this time frame were they called in by management and told to shut up and mind their own business. In addition, both Plaintiffs dispute the existence of the event that allegedly triggered their termination. Plaintiffs have presented evidence, which if believed by a jury, would support a causal connection between their complaints and their terminations.

<u>Burden-Shifting Analysis</u>

The McDonnell Douglas burden-shifting analysis is also relevant in the context of a retaliation claim. *Lewis v. St. Cloud State Univ.*, 467 F.3d 1133, 1138 (8th Cir. 2006). Therefore, if a plaintiff makes out a prima facie case of retaliation, the employer must articulate a legitimate, nondiscriminatory reason for its actions. If the employer meets its burden, a plaintiff must prove that the proffered reason is pretextual. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981). As explained in the previous sections, Plaintiffs has submitted evidence on all the required elements and established a prima facie case of retaliation.

Also, Defendant has articulated a legitimate, nondiscriminatory reason for its actions.

13

Defendant maintains that all of the events which Plaintiffs contend constitute retaliation, including termination, were not caused by any complaint of sexual harassment. Defendant submitted testimony from its management to support its position that the marked deterioration of Plaintiffs' relationships with their co-workers and supervisors caused the eventual termination of their employment. Defendant's management documented in Plaintiff Schinabeck's termination/separation notice that the "final circumstance leading to separation/termination" was: "On 4-20-2006 Terri Schinabeck was counseled on poor interaction with others, core values, Fellow employees constant complaints about comments toward them." Defendant's management similarly documented in Plaintiff Mack's termination/separation notice that the "final circumstance leading to separation/termination" was:

"Dianne Mack was counseled on 4-20-2006 on poor interaction with, others and Core Values. Fellow employees constantly complain about comments made toward them."

Since Defendant has produced sufficient evidence to support a nondiscriminatory explanation for its decision to terminate Plaintiffs' employment, Plaintiffs are afforded the opportunity to present evidence that the legitimate reasons offered by Defendant were not its true reasons, but were a pretext for retaliation; that is, plaintiffs must present evidence that they were the victims of retaliation by presenting evidence that Defendant's proffered explanations for the terminations are unworthy of credence.

Plaintiffs, in meeting their obligation to present evidence of pretext, point out that prior to their complaints in November of 2005 Plaintiffs, who had both worked for Defendant at least five years, were viewed as satisfactory employees. Only after this point in time did management keep notes and document alleged deficient performance and attitude problems regarding Plaintiffs. Plaintiffs also point out that in June of 2006 Defendant had Plaintiffs' co-workers write out post-termination statements to document their alleged pre-firing performance problems. In spite of a company policy that serious complaints were to be documented, there were no documented complaints form the alleged complaining co-workers until after the termination. Plaintiffs further contend that the nearly identical termination explanations for the two Plaintiffs are evidence of pretext. The Court concludes that Plaintiffs have created a genuine issue of material fact regarding pretext. Defendant is not entitled to summary judgment on Plaintiffs' retaliation claims. Accordingly,

IT IS ORDERED That Defendant's Motion for Summary Judgment (Doc.32) is denied in its entirety.

Dated this 9th day of May, 2007.

BY THE COURT:

Lawrence L. Piersol
Unites States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: *Shelly Margulies*
(SEAL)          DEPUTY

15